IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**POLARIS FINANCIAL MANAGEMENT LIMITED**          **PLAINTIFFS**
**and TELLURIS HOLDINGS, LTD.**

v.          **No. 3:23-cv-00238-MPM-RP**

**WILLIAM MILTON COX**          **DEFENDANT**

**ORDER**

      This matter comes before the Court on three separate summary judgment motions. First, Plaintiffs Polaris Financial Management Limited and Telluris Holdings, Ltd. (together, "PT") filed a motion for summary judgment [28] and memorandum in support [29] seeking recognition of a Canadian judgment against Defendant William Milton Cox ("Cox"). Next, Cox filed a motion for summary judgment [40] and memorandum in support [41] seeking a declaration that certain property of his is exempt from execution. Last, PT filed another summary judgment motion [58] and accompanying memorandum [59] rehashing many of the same arguments made in its previous filings. The Court, having reviewed the record and having carefully considered the applicable law, is now prepared to rule.

      The facts in this case are generally undisputed. PT and Cox were involved in a Columbian gold mining venture that ended up going even further south. PT brought an action in the Court of Queen's Bench of Alberta against Cox and two other defendants. [1, Ex. A]. The Canadian court found Cox and the other defendants jointly and severally liable to PT and, on October 3, 2022, entered a cost judgment against them for 430,429.63 Canadian dollars. [1, Ex. D]. PT then brought an action against Cox in this Court seeking recognition and enforcement of the Canadian judgment. [1]. Cox answered, opposing recognition and seeking declaratory judgment that certain of his

1

property is exempt from execution. [12].

ANALYSIS

The primary prospect PT seeks is recognition of the Canadian judgment against Cox. In Mississippi, recognition of foreign judgments is governed by the principle of comity. *Laskosky v. Laskosky*, 504 So. 2d 726, 729 (Miss. 1987). Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). "[It] is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Id*. Under Mississippi law, the application of comity "rests in the discretion of the trial judge," *Laskosky*, 504 So. 2d at 729, and a decision to recognize a foreign judgment is reviewed for abuse of discretion. *DeJoria v. Maghreb Petroleum Exploration, S.A.*, 804 F.3d 373, 379 (5th Cir. 2015) (citing *Derr v. Swarek*, 766 F.3d 430, 436 n.2 (5th Cir. 2014)).

The "general rule" in Mississippi is that "a valid foreign judgment rendered by a foreign court of competent jurisdiction will be enforced domestically." *Derr*, 766 F.3d at 442. The two exceptions to this are (1) if enforcement violates a substantial right of the non-movant or (2) if it violates the State's public policy. *Id*. Neither of these exceptions are present here. Although Cox contends that the judgment violates Mississippi public policy because it is an "automatic 'loser pays' attorney's fee," neither the record nor the law help this contention pan out. In rendering its judgment, the Canadian court stated, "The costs are always in the discretion of the Court. [T]aking into account the egregious conduct[,]…I am going to award costs on a full indemnity basis." [39, Ex. 2]; *and see* The Court of Queen's Bench Act, RSA 2000, C-31, as am., s.21 ("Subject to an express provision to the contrary in any enactment, the costs of and incidental to any matter authorized to be taken before the Court or a judge are in the discretion of the Court or judge and

2

the Court or judge may make any order relating to costs that is appropriate in the circumstances."). Further, even if the judgment would have been an automatic award of attorney's fees, it is far from certain this would be a substantial enough violation of Mississippi public policy to justify non-recognition of the Canadian judgment, *see, e.g.*, *LG Display Co. v. Obayashi Seikou Co.*, 919 F. Supp. 2d 17, 31 (D.D.C. 2013) (explaining that a foreign judgment being "repugnant to public policy" is a "high standard, and infrequently met"); *and see Compania Mexicana Rediodifusora Franteriza v. Spann*, 41 F. Supp. 907, 909 (N.D. Tex. 1941) ("We find no well marked public policy in Texas against assessing costs [including attorney's fees] against an unsuccessful plaintiff in the manner followed by the Mexican law."), and Cox cites no case where a court has refused to recognize a foreign judgment because the award included attorney's fees. Canadian courts are courts of competent jurisdiction. Neither exception was met, and by all accounts, the proceeding was fair and reasonable. The Canadian judgment, which reads as follows, is therefore recognized:

> IT IS HEREBY ORDERED THAT [on October 3, 2022]:
>
> 1. The Plaintiffs are awarded solicitor and own client, full indemnity, costs in the amount of CAD $430,429.63 against Matthew Slade, James Slade, Milton Cox, and the Corporate Defendants, jointly and severally.
> 2. The costs award in paragraph 1 of this Order shall accrue post-judgment interest pursuant to the Judgment Interest Act, RSA 2000, c J-1, until paid.
> 3. This Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in any foreign jurisdiction to give effect to this Costs Judgment and the declarations, orders and directions set out herein.

PT also requests that "Defendant Cox [be] instructed to satisfy the judgment within thirty days of its recognition." A district court "is not required to provide declaratory judgment relief, and it is a matter for the district court's sound discretion whether to decide a declaratory judgment action." *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir.1983) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 62 S.Ct. 1173 (1942)). Requiring Cox to satisfy

3

the Canadian judgment within thirty days would greatly exceed the scope of the judgment, and refusing to order Cox to satisfy the judgment does not prejudice PT in any way since the usual methods of enforcement remain available. PT seemingly concedes this point while opposing Cox's argument that an order to compel payment is improper stating, "[PT] simply seeks an instruction to Defendant Cox that he satisfy the judgment, which is arguably inherent in any order awarding relief to a party." The Court agrees that a requirement to pay is inherent in any judgment. Accordingly, the Court declines to order Cox to satisfy the judgment within thirty days.

Cox requests that certain property of his—including his house, joint bank accounts, and other assets—be declared exempt from execution and that PT be enjoined from pursuing his exempt property. PT argues that such matters are not ripe for consideration, or alternatively that this Court should exercise its discretion and refuse to consider such matters. The Court agrees with PT for three reasons.

First, this matter has not reached the stage where such a determination is appropriate. PT originally brought this action to have the Canadian judgment recognized, and most of the briefing and focus has been directed at that issue. Indeed, PT states in its memorandum in opposition to Cox's motion for summary judgment that "further factual development is required" on certain of Cox's counterclaims for declaratory and injunctive relief. The Fifth Circuit has stated that "a case is not ripe if further factual development is required." *New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987). Also, as Cox points out, "[a] claim is not ripe for review if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *United States v. Magana*, 837 F.3d 457, 459 (5th Cir. 2016). Several steps must take place before Cox's property is executed upon. PT must enroll the judgment in the correct Mississippi county to obtain a lien, wait thirty days and seek a writ of execution, attempt to collect

on the judgment, and (for the house Cox transferred to his wife) file an enforcement action under Mississippi's Uniform Fraudulent Transfers Act. During that time, any number of events could occur: Cox could satisfy the judgment, the parties could reach a settlement, or PT could choose to go after only some (or none) of the property sought to be declared exempt. The value of the house, for instance, is apparently greater than the entire judgment. If the house were used to satisfy the judgment, then the issues of whether the bank accounts, certificates of deposit, or retirement savings accounts are executable would become moot. The matter of whether Cox's property is exempt from execution is more appropriately determined when, if ever, the property is attempted to be executed upon.

Second, some of Cox's requested declaratory judgments are simply restatements of existing law or are far too broad and would serve no apparent purpose other than to encourage future litigation. Cox asks the Court to declare:

> The Defendant is entitled, upon any attempt to execute upon either real or personal property belonging to him, to designate as exempt up to $10,000.00 of cash on hand and other personal property under the provisions of Miss. Code Ann. § 85-3-1(a), and, as he is more than seventy (70) years old, also $50,000.00 of assets "of whatever type, whether real, personal or mixed, tangible or intangible, including deposits of money" pursuant Miss. Code Ann. § 85-3-1.

If the law states that a certain amount of Cox's property is exempt, then he is certainly free to claim this exemption, but the Court can discern no benefit from restating it here. In a similar vein, this Court also refuses to grant Cox's requested declaration, "The Defendant has no real estate assets upon which the Plaintiffs may levy execution." Even if the Court were to find that Cox's transfer of his interest in his marital home to his wife on the eve of the Canadian litigation was lawful and the property therefore exempt, the court still could not make such a broad declaration because stating that Cox has "no real estate assets" only creates the potential for future problems.

Third, the most important determination sought by Cox—whether the transfer of his marital

5

home created a joint tenancy or a tenancy by the entirety—is unclear under Mississippi law and better suited for resolution by a state court there. While this Court is inclined to side with PT in its contention that under *Ayers* any conveyance of property must clearly state its intention to create a tenancy by the entirety for such a tenancy to be created, the conveyance in that case involved a transfer (purporting to be a joint tenancy) from an owner to a husband and wife, not a transfer (purporting to be a joint tenancy) from an owner to *the owner*, a husband, and wife. *Ayers v. Petro*, 417 So. 2d 912, 913 (Miss. 1982). Cox's contention (only supported by caselaw from other states) that, in conveyances to married couples, the addition of an owner conveying the property to himself creates a tenancy by the entirety with respect to the interest of the married couple is not entirely unreasonable. It seems more logical for an owner transferring property to himself and a spousal pair to intend the spousal pair to receive a one-half interest and himself to receive one-half interest rather than each party receiving one-third. On the other hand, the language of the conveyance here reads, "as joint tenants," and the conveyance could have just as easily created a tenancy by the entirety through its plain language. Furthermore, the automatic creation of a tenancy by the entirety in conveyances like this would seemingly render impossible joint tenancies in such situations, and this would frustrate a conveyor's intention when a joint tenancy is preferred. Looking at the applicable statute does not clarify much:

> All conveyances or devises of land made to two (2) or more persons, including conveyances or devises to husband and wife, shall be construed to create estates in common and not in joint tenancy or entirety, unless it manifestly appears from the tenor of the instrument that it was intended to create an estate in joint tenancy or entirety with the right of survivorship. But an estate in joint tenancy or entirety with right of survivorship may be created by such conveyance from the owner or owners to himself, themselves or others, or to himself, themselves and others.

Miss. Code Ann. § 89-1-7. Seemingly from the statutory text, a conveyance purporting to create a joint tenancy can create either a joint tenancy or tenancy by the entirety.

6

The Court feels, should an attempt to execute on Cox's marital home occur, a state court would be better suited to determine the issue at that time. There, the opportunity to appeal to the Mississippi Supreme Court would exist, and any determination would create binding case law filling the present gap. In *Thibodaux*, the U.S. Supreme Court upheld a federal district court's abstention in a case where "[t]he federal judge [was] an 'outsider' who might discern less in the statute than state courts…and his interpretation thereof might result in undesirable inconsistency with subsequent interpretations by state courts determining the rights of litigants in similar situations." *Louisiana Power & Light v. Thibodaux: The Abstention Doctrine Expanded*, 69 Yale L.J. 643, 650 (1960) (citing *La. Power & Light Co. v. Thibodaux*, 360 U.S. 25, 30 (1959)). Although the breadth of the *Thibodaux* Abstention Doctrine is somewhat unclear, the Supreme Court later cited it stating, "Abstention is… appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814 (1976) (citing *La. Power & Light Co. v. Thibodaux*, 360 U.S. 25, 30 (1959)). A difficult and unsettled problem of state law is present here, and even if the issue here does not bear on policy problems of substantial enough public import to warrant *Thibodaux* Abstention, Cox's counterclaims still fail for ripeness.

## CONCLUSION

**ACCORDINGLY**, Plaintiffs Polaris Financial Management Limited and Telluris Holdings, Ltd.'s first motion for summary judgment [28] is **GRANTED** in part and **DENIED** in part. The Canadian judgment is recognized. The Court refuses to order Defendant William Milton Cox to satisfy the judgment within thirty days. Defendant William Milton Cox's motion for summary judgment [40] is **DENIED**. Plaintiffs' second motion for summary judgment [58] only

requests the Defendant's motion for summary judgment be denied, and, as such, it is **DISMISSED** as moot.

A separate judgment in accordance with this Order will be entered on this date.

**SO ORDERED** this the 6th day of September, 2024.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI